IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DIAMANTE DONZAY COPELAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 119-182 |
| | ) | (Formerly CR 116-087) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at the Federal Correctional Institution in Estill, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

### A.      Indictment

On December 7, 2016, the grand jury in the Southern District of Georgia returned a one-count indictment against Petitioner charging him with possession of firearms by a conviction felon, in violation of 18 U.S.C. § 922(g)(1). United States v. Copeland, CR 116-087, doc. no. 1-1 (S.D. Ga. Dec. 7, 2016) (hereinafter "CR 116-087"). Petitioner faced a statutory sentence of not more than ten years of imprisonment. Id., doc. no. 2. The Court appointed attorney Shawn Merzlak to represent Petitioner. Id., doc. no. 12.

**B.    Guilty Plea**

On February 15, 2017, Petitioner appeared with counsel and entered a guilty plea to the felon in possession of firearms charge.  Id., doc. nos. 16-18.  The written plea agreement identified the elements of the offense as:  "(1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year." Id., doc. no. 18, ("Plea Agreement"), p. 1.  In exchange for the guilty plea, the government agreed to (1) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (2) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35.  Id. at 3-5.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea:

That on or about the 7th day of September, 2016, in Richmond County, in the Southern District of Georgia, the defendant:

### DIAMANTE DONZAY COPELAND

having been convicted of crimes punishable by imprisonment for a term exceeding one year, those being:  Entering an Automobile (10 counts), Richmond County Superior Court, State of Georgia, Case No. 2015-RCCR-1180, January 29, 2016, did knowingly possess, in and affecting interstate commerce, certain firearms, those are:  one German Sports Guns, Model Rebel, AK47, .22 caliber rifle, with serial number A460719 and one Smith & Wesson, Model Bodyguard, .380 caliber pistol, with serial number KBS7019, both of which previously had been shipped and transported in interstate and foreign commerce, done in violation of 18 U.S.C. § 922(g), and 924(a)(2).

Id. at 2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual

basis set out therein is true and accurate in every respect." Id. at 10.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. By signing the Plea Agreement, Petitioner additionally attested Mr. Merzlak had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 34 ("Rule 11 Tr."), pp. 4, 6. Judge Hall asked Petitioner, who was under oath, whether he could read and write, to which Petitioner responded, "Yes, sir." Id. at 6. Judge Hall also reviewed the charge to which Petitioner was pleading guilty and confirmed Petitioner had as much time as he needed to go over the charges with Mr. Merzlak. Id. at 6-7, 10. Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Merzlak and that he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 8, 10.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 8-10. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the

government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall further explained that if Petitioner went to trial, the government would have to prove that before Petitioner possessed the two firearms listed in the indictment, he had been convicted of a felony, "which is a crime that is punishable by imprisonment for more than 1 year."  Id. at 14.  Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 10-11.  Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 11.

Judge Hall reviewed the statutory penalty of a sentence up to ten years in prison.  Id. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $ 250,000 fine and up to three years of supervised release after completion of the term of imprisonment.  Id. at 11-12.  Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition.  Id. at 12.  Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI.  Id. at 12-13.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 14. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id.

Next, Judge Hall heard a factual basis for the guilty plea from Daryl Oehrlein, an Investigator with the Richmond County Sheriff's Office ("RCSO").  Id. at 15-19.  Inv. Oehrlein testified another investigator with the RCSO informed him that Petitioner, a known

convicted felon, had posted a firearm for sale on Facebook on September 6, 2016.  Id. at 15-16.  Inv. Oehrlein contacted an officer with Georgia Probation and Parole who confirmed Petitioner's status as a convicted felon and the existence of a Fourth Amendment waiver as a condition of probation.  Id. at 16.  Inv. Oehrlein and two probation officers went to Petitioner's residence, conducted a search of his room, and located two firearms.  Id. at 16-17.  After interviewing Petitioner about the firearms, Inv. Oehrlein discovered the Smith & Wesson firearm found in Petitioner's room had previously been reported stolen, although Petitioner was not implicated in the burglary.  Id. at 18-19.  Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, Firearms and Explosives determined the firearms had not been manufactured in Georgia and were received or possessed in Georgia such that they had traveled in or affected interstate commerce.  Id.

Petitioner confirmed to Judge Hall the information provided by Inv. Oehrlein and contained in the indictment was true, that when he possessed the two firearms in September 2016 he was already a convicted felon, and he was guilty of, and wanted to plead guilty to, the felon in possession charge.  Id. at 19-20.

Judge Hall then summarized the proceedings as follows:

. . .  [T]his Court finds that "[Petitioner] is competent.  He fully understands the charge against him.  There is an independent factual basis for his plea of guilty containing each of the essential elements of the offense.  He knows the statutory punishment that could be imposed on this charge, and he knows his jury rights, which he has knowingly and voluntarily waived.

I further find that [Petitioner's] decision to plead guilty today was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.

Therefore, the plea is accepted, and I now adjudge [Petitioner . . .] guilty of Count 1 of the indictment based on his plea of guilty.

Id. at 20-21.

### C.   Sentencing

The United States Probation Office then prepared a PSI which set Petitioner's Total Offense Level at twenty-one, Criminal History Category at IV, and Guidelines imprisonment range at fifty-seven to seventy-one months.  PSI ¶¶ 24, 31, 53.  The felon in possession of a firearm charge carries a statutorily authorized maximum sentence of imprisonment of ten years.  18 U.S.C. §§ 922(g) and 924(a)(2); PSI ¶ 52; CR 116-087, doc. no. 2.  The criminal history section listed the felony conviction on ten counts of entering an automobile with intent to commit a theft in Richmond County Superior Court, Case No. 2015-RCCR-01180, listed in the indictment and Plea Agreement, as well as the felony conviction on eight counts of entering an automobile with intent to commit a theft in Richmond County Superior Court, Case No. 2015-RCCR-00566.  PSI ¶¶ 27, 28.

The PSI also memorialized the following written statement from Petitioner:

> I, Diamante Donzay Copeland, the Defendant in this action, do freely and voluntarily admit that I violated 18 U.S.C. § 922(g) in that I knowingly possessed a firearm in or affecting commerce, and that before possessing the firearm, I had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year.

PSI ¶ 11.  Based on his statement, the PSI concluded Petitioner appeared to have accepted responsibility for his actions, and he received a three-point reduction on his adjusted offense level.  PSI ¶¶ 12, 20, 22-24.  Petitioner did not file any objections to the PSI.  See PSI Add.

At sentencing, Judge Hall imposed a term of imprisonment of sixty months, consecutive to any state sentence imposed for violating probation in Petitioner's prior Richmond County Superior Court cases 2015-RCCR-00566 and 2015-RCCR-01180.  CR 116-

087, doc. no. 23.  Consistent with the Plea Agreement and in accordance with his expressed wishes on the Post-Conviction Consultation Certification, Petitioner did not file an appeal.  <u>Id.</u>, doc. no. 24.

### D.        § 2255 Proceedings

Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence arguing he is entitled to have his felon in possession conviction vacated in light of the decision of the United States Supreme Court in <u>Rehaif v. United States</u>, 139 S. Ct.  2191 (U.S. 2019).  (<u>See generally</u> doc. nos. 1, 4, 10.)

## II.     DISCUSSION

In <u>Rehaif</u>, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.  Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." <u>United States v. Rehaif</u>, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.  The Eleventh Circuit Court of Appeals has determined the Supreme Court's <u>Rehaif</u> decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law.  <u>In re Palacios</u>, 931 F.3d  1314, 1315 (11th Cir. 2019).  The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal.  <u>Id.</u>

Petitioner argues he is innocent of the charge to which he pleaded guilty because he is illiterate and did not understand the <u>Rehaif</u> mens rea element at the time of his guilty plea.  (Doc. no. 1, pp. 5-6; doc. no. 4, p. 3.)  In essence, Petitioner contends he did not know he

belonged to the category of persons barred from possessing firearms at the time he possessed the firearms.  Respondent argues the § 2255 motion should be denied for three reasons:  (1) the claim is barred by the collateral attack waiver; (2) the claim is procedurally defaulted; and (3) any error was harmless.

### A.    Petitioner's Claim Is Barred by the Valid Collateral Attack Waiver in the Plea Agreement

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*).  Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement signed and verified by Petitioner explicitly set forth he was

voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same, on any ground other than ineffective assistance of counsel. Plea Agreement, p. 6.  The waiver exceptions do not apply because Petitioner's sentence did not exceed the statutory maximum of ten years of imprisonment or the advisory Guidelines range as determined by Judge Hall at sentencing, and the government did not appeal.  Id. Likewise, the Rehaif claim is not based on a claim of ineffective assistance, and therefore does not fall within the only exception to the collateral attack waiver.  Id.  Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms. Rule 11 Tr. 10-11.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and the Rehaif claim falls within the scope of the waiver.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's Rehaif claim.  See United States v. Marc, - F. App'x -, No. 19-10656, 2020 WL 1487670, at *3-4 (11th Cir. Mar. 25, 2020) (per curiam) (enforcing knowing and voluntary appeal waiver to bar Rehaif claim).

**B.      Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary**

Having determined that Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the

Court turns to the knowing and voluntary nature of the guilty plea.  For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement."  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing Bushert, 997 F.2d at 1350-51).

### 1.        Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core

principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Hall reviewed the felon in possession charge against Petitioner and confirmed Petitioner had sufficient time to review the charges with Mr. Merzlak. Rule 11 Tr. 6-7, 10. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 8-10. Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement. Id. at 4, 11. Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction, to include up to ten years in prison. Id. at 11. Finally, Petitioner also testified he was satisfied with the help he had received from Mr. Merzlak. Id. at 8; see also Plea Agreement, p. 8 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 10 ("I have read and carefully reviewed this agreement with my attorney.").

Petitioner argues his guilty plea was not made knowingly because no one ever explained to him, and he did not understand, that the government had to show he knew he belonged to the relevant category of persons prohibited from possessing firearms. In further support of his argument, he strenuously argues he was hampered in understanding the charge to which he was pleading because of his illiteracy. Of course, at the time he entered his guilty plea, the law did not require the government to prove the mens rea element. Rehaif, 888 F.3d at 1144. Therefore, his "misunderstanding" of what the government had to prove was not a misunderstanding at all. Rather, the Supreme Court clarified in its Rehaif decision what the government had to prove in a felon in possession case. Rehaif, 139 S. Ct. at 2200. In any event, Judge Hall explained to Petitioner at the change of plea proceedings that if Petitioner went to trial, the government would have to prove he had been convicted of a felony before possessing the firearms listed in the indictment. Rule 11 Tr. 14.

Moreover, his claim of illiteracy rings hollow in light of his sworn testimony to Judge Hall that he could read and write (Rule 11 Tr. 6), and his signature on the Plea Agreement attesting he "read and carefully reviewed the agreement with [his] attorney." Plea Agreement, p. 10. Petitioner also confirmed in his state court felony proceedings that he was able to read, write, speak, and understand English. (See doc. no. 9-1, pp. 25, 27; doc. no. 9-2, pp. 25, 27.) Petitioner's belated claims of illiteracy and misunderstanding afford him no relief. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings.")

The thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Accordingly, the Court concludes Petitioner

entered a knowing and voluntary guilty plea to the felon in possession charge.  Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's <u>Rehaif</u> claim.

Finally, although Respondent does not argue the point, failure to include the mens rea element of a § 922(g) felon in possession charge is a non-jurisdictional defect.  <u>See</u> <u>United States v. Moore</u>, 954 F.3d 1322, 1334-35 (11th Cir. 2020); <u>United States v. McClellan</u>, 958 F.3d 1110, 1118 (11th Cir. 2020).  Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge.  <u>See</u> <u>United States v. Ward</u>, 796 F. App'x 591, 599 (11th Cir. 2019) (*per curiam*); <u>see also</u> <u>United States v. Brown</u>, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect waived by guilty plea); <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### C.   Petitioner Procedurally Defaulted His <u>Rehaif</u> Claim by Failing to Assert it on Direct Appeal

Even if Petitioner's <u>Rehaif</u> claim were not barred by the valid collateral attack waiver as argued by Respondent, it is procedurally defaulted.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be

reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170. As to the exception for actual

innocence, the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a <u>severely confined</u> category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623-24 (citation omitted).

Petitioner alleges the indictment was inadequate because it failed to include the mens rea element of the offense, and he did not know he "belonged to the relevant category of persons barred from possessing firearms at the time he possessed the firearms." (Doc. no. 10, pp. 1-2.) However, Petitioner did not raise his mens rea claim before Judge Hall or on direct appeal. Petitioner points out as justification for this failure that the claim was foreclosed by Eleventh Circuit precedent before the Supreme Court's <u>Rehaif</u> decision. However, as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement. <u>Id.</u> at 623. Moreover, the building blocks for the claim were available. <u>Bane</u>, 948 F.3d at 1297. As the Eleventh Circuit has explained, the Supreme Court's <u>Rehaif</u> decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2). <u>See</u> <u>In re Palacios</u>, 931 F.3d at 1315.

Petitioner points to nothing that prevented him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." <u>Prost v. Anderson</u>, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to litigants who

"took the trouble to challenge adverse circuit precedent." Id. at 590-91.[1]  As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused.  See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element.  See McQuiggin, 569 U.S. at 386. This is particularly true in light of Petitioner's criminal history.  Along with its response in this case, Respondent submitted copies of Petitioner's certified conviction on eight counts of entering an automobile with intent to commit theft, and his 2016 conviction on ten more counts of the same charge.  (See doc. nos. 9-1, 9-2.)  As summarized by Respondent, "[Petitioner] was previously convicted of 18 felonies where he acknowledged that he could have been sentenced to up to 5 years in prison for each count of conviction, and the state prosecutor was free to seek up to 10 years' incarceration."  (Doc. no. 9, p. 12; see also doc. no. 9-1, pp. 1, 24; doc. no. 9-2, pp. 1, 24.)

Moreover, Petitioner admitted he was already a convicted felon when he possessed firearms in September 2016.  (Rule 11 Tr. 19-20.)  Petitioner also signed the Plea Agreement recounting the prior ten convictions for entering an automobile, (CR 116-087, doc. no. 18, pp. 2, 10); and the PSI detailed Petitioner's prior criminal history, to which he did not object, (PSI ¶¶ 27-28; PSI Add.).  "It is the law of this circuit that a failure to object to allegations of fact

---

[1]For the sake of completeness, the Court notes a collateral attack waiver cannot serve as cause to excuse procedural default.  See Lester v. United States, No. 3:17-CR-76-J-32JBT, 3:18-cv-1076-J-32JBT, 2020 WL 1911462, at *4 (M.D. Fla. Apr. 20, 2020).

in a PSI admits those facts for sentencing purposes. <u>United States v. Wade</u>, 458 F.3d 1273, 1277 (11th Cir. 2006). For the sake of completeness, the Court also notes: (1) the indictment listed Petitioner's multiple prior felony convictions, (CR 116-087, doc. no. 1-2); (2) Judge Hall reviewed those convictions, without question from Petitioner, at the change of plea proceedings, (Rule 11 Tr. 6-7); and (3) in his bid for securing his acceptance of responsibility point reduction, Petitioner told the probation officer he had been convicted of a felony before possessing the firearms as charged, (PSI ¶ 11).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon. "[W]here the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a <u>Rehaif</u> error does not affect his substantial rights." <u>McClellan</u>, 958 F.3d at 1119 (citing <u>United States v. Reed</u>, 941 F.3d 1018, 1022 (11th Cir. 2019)); <u>see also</u> <u>Ward</u>, 796 F. App'x at 600-01 (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm). Stated otherwise, a bare <u>Rehaif</u> claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim. <u>See</u> <u>In re Wright</u>, 942 F.3d 1063, 1065 (11th Cir. 2019); <u>Reed</u>, 941 F.3d at 1021-22.

In sum, Petitioner procedurally defaulted his <u>Rehaif</u> claim. <u>See</u> <u>United States v. Sanders</u>, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 <u>Rehaif</u> claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

**D.    Petitioner Is Not Entitled to Relief on the Merits Because Omission of the Mens Rea Element Was Harmless Error**

Even if Petitioner's <u>Rehaif</u> claim were not barred by the valid collateral attack waiver and procedurally defaulted, he is not entitled to relief because the <u>Rehaif</u> error was harmless. It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962). On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious effect or influence" on the outcome of the underlying proceedings. <u>Al-Amin v. Warden Ga. Dep't of Corr.</u>, 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), *cert. denied sub nom.* <u>Al-Amin v. Ward</u>, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020). The Eleventh Circuit has explained that when applying the appropriate harmless error analysis under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." <u>Ross v. United States</u>, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms forming the basis of his § 922(g) conviction. As discussed in Part II(C), *supra*, Petitioner had accrued multiple felony convictions for entering an automobile with intent to commit theft, resulting in exposure to multiple prison sentences in excess of one year. PSI ¶¶ 27, 28; (<u>see also</u> doc. nos. 9-1, 9-2). The PSI recounted Petitioner's admission he possessed a firearm after he had been convicted of a felony, "that is, a crime punishable by imprisonment for more than one year." PSI ¶ 11.

Petitioner did not object to any of the information in the PSI, nor did he object at any time when he signed the Plea Agreement listing his prior felony convictions, Judge Hall reviewed the charges at the change of plea hearing, or Inv. Oehrlein testified about Petitioner's prior criminal history.  Petitioner also specifically told Judge Hall he was "a convicted felon" when he possessed the firearms in September 2016.  Rule 11 Tr. 20.

That Petitioner had multiple prior felony convictions that he knew were punishable by imprisonment for more than one year shows he knew his status as a felon prior to his federal offense date.  See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Caldwell, - F. App'x -, No. 18-15987, 2020 WL 914922, at *4 (11th Cir. Feb. 26, 2020) (per curiam) (finding no plain error affecting substantial rights on direct appeal where defendant responded affirmatively to district court questions if he knew what a felony was and if he had previously pled guilty to a felony); United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (per curiam) (finding no plain error affecting substantial rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence shows knowledge of status as a felon); United States v. Gilcrest, 792 F. App'x 734, 736 (11th Cir. 2019) (per curiam) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown the Rehaif error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," and he is not entitled to relief.  See Brecht, 507 U.S. at 634 & n.8.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of June, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA